UNITED STATES OF AMERICA *v.* ESTATE OF BERNICE PAUAHI BISHOP, deceased, and JOSEPH O. CARTER, *et al.,* Trustees under the will of BERNICE PAUAHI BISHOP, deceased; OAHU RAILWAY AND LAND COMPANY, LIMITED, a corporation; THE DOWSETT COMPANY, LIMITED, a corporation; THE HONOLULU SUGAR COMPANY, a corporation; HONOLULU PLANTATION COMPANY, a corporation; CHOW AH FO, JOHN II ESTATE, LIMITED, a corporation; WILLIAM G. IRWIN, OAHU SUGAR COMPANY, LIMITED, a corporation; BISHOP & COMPANY, a copartnership.

DATED: DECEMBER 12, 1901.

1. Under the Federal Constitution, private property cannot be taken for public uses without just compensation.

2. Just compensation means compensation that is just to both sides, just in regard to the public as well as to the individual.

3. Whenever private property is taken for public uses or purposes, the fair market value of the property at the time of the taking should be paid for it.

4. The actual value of the property at the date of the summons is designated as the measure of valuation of all property to be condemned, under the Hawaiian Statute.

5. A fair equivalent for any entire piece of property is its market value in money, which value must be shown by the usual and common means.

6. What property sought to be condemned will bring at a fair public sale where one party wants to sell and another wants to buy, may be taken as a criterion of its market value.

7. The probable value of land for residential purposes, or for the purposes of a public resort, cannot be considered, in the absence of any evidence of residences on said land, or that the same was ever used for a public resort.

8. Burden of proof is on the plaintiff to prove the value of interest of defendant in the lands sought to be condemned.

9. The evidence of experts as to values does not differ in principle from the evidence of experts upon other subjects.

10. In considering the opinions of experts, the jury is not bound to give weight to testimony which is contrary to what every person of good sense and ordinary intelligence knows to be true.

11. Knowledge obtained by the jury through a personal inspection of the lands in controversy may be used only in determining the weight of conflicting testimony as to the value of the land, but not otherwise.

12. While the jury cannot act upon material facts resting only within its private knowledge, but must be controlled by the evidence adduced, the members of the jury should yet judge of the weight and force of that evidence by their own general knowledge of the subject.

13. Compensation in this case is to be estimated by the actual rights acquired by the government, and not by the use which the government may make of these rights.

14. The actual value of the property to be condemned cannot be enhanced by reason of any projected improvements for which it is sought to be taken.

15. Willingness or unwillingness of defendant to part with its property is not a proper element of value.

16. Prospective or speculative values not to be considered.

17. The value of leases on the land to be condemned is not to be considered in arriving at the true market value of the fee in the land.

18. Sworn returns of the value of said lands made to the Assessor of the territory by the defendant are admissions against interest, and are competent evidence tending to show the market value of the property at the time of the making of the said sworn returns.

19. Improvements on land sought to be condemned are to be assessed separately from the value of the land itself.

20. In determining on which side the weight or preponderance of the evidence is, the jury should consider the opportunities of witnesses for seeing or knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack

of interest in the result of the suit, and the probability or improbability of the truth of their several statements in view of all the other evidence adduced on the trial.

21.   All the evidence in the case, both direct and circumstantial, must be taken into consideration, together with all reasonable inferences to be drawn from such evidence.

EMINENT DOMAIN.
> Action brought to condemn certain lands under the provisions of an Act of Congress dated August 1, 1888, entitled "An Act to authorize the condemnation of land for sites of public buildings and for other purposes."

*J. J. Dunne,* Assistant U. S. District Attorney, for the government.

*Kinney, Ballou & McClanahan* and *Holmes & Stanley,* for defendant, Estate of Bernice Pauahi Bishop, deceased, and Joseph O. Carter, *et al.,* Trustees under the will of Bernice Pauahi Bishop, deceased.

*Bishop Estate Case.*

### CHARGE TO THE JURY.

ESTEE, J.   This action is brought under the provisions of an Act of Congress of the United States, dated August 1, 1888, entitled "An Act to authorize the condemnation of land and for sites of public buildings and for other purposes". (Vol. 25 U. S. Stats. P. 357).

The special lands sought to be condemned are certain lands situate in the District of Ewa, in and about the Harbor of Pearl Lochs, sometimes called Pearl Harbor, in the Island of Oahu, in the Territory of Hawaii.

The United States of America seeks to condemn these lands and to acquire a fee simple estate therein, for a public use, to wit: for the purpose of erecting and maintaining thereon a

Naval Station and channel defense for the uses and purposes of the United States of America, and of the Navy Department thereof, and for the improvement of the harbor and channel leading thereinto, known as Pearl Lochs, sometimes called Pearl Harbor; together with the erection and maintenance upon said tracts and parcels of land of all such public buildings, magazines, arsenals, navy-yards, light-houses, quarantine stations, wharves, docks, piers, canals, roads, ditches, flumes, acqueducts, pipe-lines, cemeteries and sewers as may be proper or necessary to or for the efficient maintenance of said Naval Station and harbor and channel defense, for the uses and purposes of the United States government therein and of its said Navy Department.

Among the tracts and parcels of land sought to be condemned by the said United States government in this action, are certain lands belonging to the Estate of Bernice Pauahi Bishop, deceased, which are shown on that certain map known and designated as Hawaiian Government Survey Registered Map No. 1739, said lands being in two portions, "A" and "B" particularly described as follows:

Portion "A": Commencing at a point on the shore on the eastern side of the channel which leads into Pearl Lochs, where the northern shore of the second fish pond below Keanapuaa Point as shown on Chart No. 1800, published by the Hydrographic Office of the United States Navy Department, joins the low water mark of the said channel; thence following the shore to the northward, along the line of low water mark to the said Keanapuaa Point or Keanapuaa as marked on said chart; thence following the shore along low water mark in a general easterly direction to what is shown on said chart as south-east loch, and along the low water shore line of south-east loch to the point in the northern arm of south-east loch where the low water shore line touches the wall shown on the said chart as extending in a south-easterly direction from the south-east corner of Loko Kuana; thence in an easterly direction along said wall to its end;

thence east, magnetic, to the line of the Oahu Railway; thence across said railway and in the same direction, to wit: East magnetic, eight hundred (800) feet distant from the center of the said railway line to a point; thence south 22 1-2 degrees east magnetic to the general southern boundary line of the Estate of Bernice Pauahi Bishop, deceased, sometimes called B. P. Bishop Estate, as shown on the aforesaid Hawaiian Government Survey Registered Map No. 1738; thence along the said boundary line in a southwesterly direction to where the said boundary line touches the said Oahu Railway, and partly across the said railway in the same direction to its center line; thence still in a southwesterly direction, but more westerly, across the said railway, and continuing in the same direction to a point at about the middle of the Eastern shore of the said second fish pond below the said Keanapuaa Point; thence along the shore of the said fish pond to the northward and to the westward to the point of commencement; comprising to high water mark about six hundred and thirty-five (635) acres more or less; together with all water, riparian, fishing and other rights and rights of way and other easements, incidental or appurtenant to the said portion "A".

Portion "B".   The whole of that certain Island shown upon the aforesaid Hydrographic Office Chart No. 1800, and known and designated as Kuahua, to low water mark and comprising to high water mark, about 41.5 acres more or less, together with all water, riparian, fishing and other rights and rights of way, and other easements, incidental or appurtenant to said Portion "B".

The question before you then is what is the market value of these lands with the appurtenances, and what is the just compensation to be paid by the United States government to the owners thereof, namely; the Estate of Bernice Pauahi Bishop, deceased, and that just value you are to assess in this case.

You are aware that private property cannot be taken for public use without "just compensation". This is the language of our fundamental law, the Federal Constitution (Article 5 of

the Amendments of 1791); and from this language you will observe that the compensation spoken of must be just. In this behalf I charge you that it is your duty, to treat both sides of this case with equal fairness and impartiality, and to avoid giving to one side any preferment or advantage denied to the other.

In other words, when dealing with this matter of compensation, you are to remember that "just compensation" means compensation that is just to both sides, just in regard to the public as well as to the individual. You are not, for instance, to place an unduly depreciative valuation upon this property because the government desires it; nor should you place an exaggerated valuation upon the property either because it is private property, or because the government may desire it.

Your province is to proceed and act throughout with even handed fairness and impartiality, treating both sides alike and deciding disputed questions solely upon the evidence received within the lines laid down by this charge, you being the sole judges of the weight of the evidence introduced.

I instruct you that whenever private property is taken for public uses or for public purposes, the fair market value of the property at the time of the taking should be paid for it; and according to the statute of this territory, the actual value of the property at the date of the summons is designated as the measure of valuation of all property to be condemned; and I charge you that the date of the summons in this case is July 6th, 1901.

It is to this date, therefore, that you are to look in fixing the value of the property involved in this case. You are to remember that the material consideration is the actual condition of the property as it stood on that date. It is to this that you are limited. The prospective or speculative value of the land from possible improvements or prospective uses, can not be considered by you; the value must be actual, and not speculative or mere possible value.

It is not proper, therefore, to consider how the property might

be improved or the cost of such improvements; nor can you consider what the probable value of the land would be if this or that improvement were placed upon it; nor can you consider the intention of the owner to make improvements, even though you should find such intention to exist. In brief, you are to limit your consideration to the actual condition of this property as it actually stood on July 6th, 1901.

A fair equivalent for any entire piece of property is its market value in money.

The burden of proving the market value of the interest of the defendant in the lands in question is upon the plaintiff; in other words, the claim of the plaintiff as to the amount of compensation to be awarded defendant must be proven by the plaintiff by a preponderance of the evidence.

The Island of Kuahua is admitted by the pleadings to be an independent and separate tract of land and to be no part or portion of any other tract of land, and therefore in assessing compensation for the taking of said Island, you will not deduct from such compensation the value of any betterments or benefits whatsoever. In other words, you must award to the defendants for said Island, its full market value as of the sixth of July, 1901.

In fixing the value of Kuahua Island, you are to consider all the testimony bearing upon its market value on the said 6th day of July, 1901, but you are not to consider an extreme, speculative value if any such has been given in the testimony. It has been testified by one witness for the defendant that the Island was worth three thousand dollars an acre for residential purposes or for the purpose of a public resort. In considering that testimony you are to bear in mind that it nowhere appears in the testimony that there were any residential or other structures on the Island of Kuahua at the date of the commencement of this suit, or that the said Island was ever used for residence purposes or as a resort; but there is testimony to the point that this Island is surrounded by a lagoon and not by the open sea, and that the climate there is excessively hot.

It is your province under the testimony of the witnesses whose opinions have been given upon the subject of the value to consider the same by reference to the whole situation of the property, and its surroundings, and all the attendant circumstances by applying to all the circumstances, your own knowledge and general experience. The evidence of experts as to values does not differ in principle from the evidence of experts upon other subjects. So far from laying aside your own general knowledge and ideas, you may apply that knowledge and those ideas to the matters of fact in evidence, in determining the weight to be given to the opinions expressed. And while the jury cannot act in any case, upon particular facts material to its disposition, resting only within their private knowledge, but should be governed by the evidence adduced, yet they should judge of the weight and force of the evidence by their own general knowledge of the subject; and while great weight should always be given to the opinions honestly and candidly expressed of those familiar with the subject, they are yet to be intelligently examined by the jury, in the light of their own personal knowledge, giving them force and control only to the extent that they are found to be reasonable. (*Head v. Hargrave* 105 U. S. 45, 49.

In brief, the jury is not bound to give weight to testimony which is contrary to what every person of good sense and ordinary intelligence knows to be true.

The object of this trial is to find out, as I have stated, what was the market value of the land described belonging to the Estate of Bernice Pauahi Bishop, deceased, on the 6th day of July, 1901. It is usual for juries to try and reconcile conflicting testimony if it is possible to do so. In this case, it would seem difficult to do this as the divergence among the witnesses on the question of value is so great.

Some of complainant's witnesses testified that the land as a whole was worth fifty dollars an acre; while four of the witnesses for defendant testified that some 350 acres of the land sought to be comdemned was of the value of $300 an acre for

raising cane. Several of the witnesses for defendant fixed the value of a portion, three hundred feet deep by thirteen thousand feet frontage on the lagoon, at from $1000 to $1500 an acre; and one witness testified that Kuahua Island, consisting of about forty-one acres in round numbers, was worth $3000 an acre.

In reaching your verdict therefore, you must consider all phases of the case and all the testimony. You are to assume that all witnesses are honest until the contrary appears; but in all events, you are to be the judge of the weight and character of the testimony. To do this you must analyze the testimony and from such analysis make your verdict.

It will be your duty, however, to attempt as far as possible to reconcile conflicting testimony on this question of value; and in attempting to so reconcile this conflict, you should consider carefully the theories presented by each witness, and upon which he bases his opinion. Observe if the witnesses have unduly exaggerated or diminished the value of the land in arriving at their estimates and note if the theories upon which the witnesses on either side have proceeded are sound or unsound. In doing this you may be able to reconcile conflicting statements of testimony and be able to arrive at a just estimate of the value of this land.

One thing you should bear in mind, that the market value of this land on July 6th, 1901, must be shown by the usual and common means adopted for such purpose, and no mere speculative valuations are to be considered by you.

In determining upon which side the preponderance of evidence is, you should take into consideration the opportunities of the several witnesses for seeing or knowing the things about which they testified, their conduct and demeanor while testifying, their interest or lack of interest if any, in the result of the suit, the probability or improbability of the truth of their several statements in view of all the other evidence adduced, or circumstances proved on the trial, and from all the circumstances determine on which side is the weight or preponderance of the evidence. In dealing with the testimony, you must not

forget by whom it was given, the motive of the particular witness if any, the purpose by which he is actuated, the partisanship if any, attributable to him; indeed, any fact or circumstance by which his unbiased utterance of truth might be impeded or prevented altogether, must receive your attention. You are seeking the truth.

Thus you would not, as men of sense, so readily yield to the testimony of a witness whose partiality is known or observable, as you would have done had the same witness been wholly indifferent between the parties and with no partisan motive to actuate him—no interest in the result of the trial other than the general interest which every good citizen ought to feel, that in this as in all other trials, justice must be done according to law.

By a preponderance of the evidence is not meant, gentlemen, the evidence given by the greater number of witnesses, but the superior strength of such evidence and the greater weight which such evidence may have in your judgment.

Gentlemen of the jury, early in the trial, you visited the lands, sought to be condemned. The object of such visit was that you might acquaint yourself with the physical conditions and characteristics, and the nature and extent of the land so as to better enable you to understand the evidence on the trial of the case. The knowledge so acquired may be used by you in determining the weight of conflicting testimony respecting the value of this land, but not otherwise.

I have told you that the fair market value of the property as that property actually stood on July 6th, 1901, should be paid for it; and in this behalf I charge you that what this property would bring at a fair public sale, where one party wants to sell and another wants to buy may be taken as a criterion of its market value. But you must understand that compensation is to be estimated in this case by the actual rights acquired by the government, and not by the use which the government may make of these rights; and therefore, I instruct you, that the fact that this property may be desired by or necessary to, the

government, is not to be considered by you in fixing compensation.

I further instruct you that the actual value of this property cannot be enhanced by reason of the projected improvement for which it is taken; for this would simply be to make the government pay for an enhancement caused by its own work. And moreover, the willingness or unwillingness of the Bisohop Estate to part with its property is not a proper element of value; nor can you consider what the Bishop Estate would give rather than be deprived of this property. As I have heretofore said, you will, in determining compensation, limit your attention to the market value of the property as it actually stood on July 6th, 1901, and be guided solely by that.

Some evidence has been introduced by the government showing certain valuations sworn to and filed with the Assessor, pursuant to the requirements of the territorial statute in that regard. Upon this subject I charge you that such sworn returns to the Assessor are called by law, admissions against interest and are competent evidence tending to show the value of the property referred to therein at that time. You may therefore, and indeed it is your duty to consider such returns along with the other evidence in the case bearing upon the question of value, of this property.

I instruct you also, that the option given by the defendants to the United States for a portion only of the property now condemned, subject to existing leases held by the Honolulu Sugar Company, is to be considered by you only along with all other evidence bearing on the market value of the property condemned. Your duty is to determine by your verdict the real and true market value of the land in question on July 6th, 1901, by considering all the evidence bearing on that point.

The leases referred to in the trial of this case have nothing to do with the value of the interest of the Estate of Bernice Pauahi Bishop, deceased, in this land.

The values of those leases are to be determined in the near future by this Court in another trial. You cannot settle the

value of the interest of the Bishop Estate therefore in the land in question by any reference to these leases; therefore I instruct you to disregard said leases entirely, in arriving at the value of the interest of the Bishop Estate in this land.

Gentlemen, in arriving at a verdict in this case, you are to give to the testimony such weight and effect as in your judgment it deserves; but you should not treat such testimony arbitrarily or capriciously nor should you limit your consideration to any isolated or fragmentary part thereof. On the contrary, you are to take into consideration, all the evidence in the case both direct and circumstantial, together with all reasonable inferences to be drawn from that evidence.

In rendering your verdict you will assess by itself, and as a separate item, the market value on the 6th day of July last, of any improvements that you may find from the evidence to have been on the condemned premises at that date.

I further charge you, that no direct and special benefit or benefits to that portion of defendant's land not taken have been proven in this case, and you will therefore in arriving at the market value of the portion taken, make no deduction therefrom for benefits to the part not taken.

Gentlemen of the jury, in arriving at a verdict in this case, it must be by the unanimous assent of all your members.

Under the pleadings in this case, the complainant is entitled to the condemnation of the land described, and you must find a verdict in favor of the defendant for the market value of the lands so condemned; because as I have heretofore stated, under the Constitution of the United States, private property cannot be taken for a public use unless just compensation is paid therefor.

I again finally instruct you that you are to be the sole judges of the facts in the case.